***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. St. Paul Travelers is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained a compensable injury by accident on October 9, 2001.
5. Plaintiff's average weekly wage is $726.53, yielding a compensation rate of $484.38.
6. The issues before the Commission are whether plaintiff's low back, gastrointestinal and psychological conditions are related to the compensable injury by accident; whether plaintiff is permanently totally disabled; and whether the UNC Pain Clinic should be approved for treatment.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-year-old male with a high school education.
2. Plaintiff was employed by defendant-employer as a maintenance technician. Plaintiff's duties included maintenance work, light replacement, service of heating and air conditioning systems, snow removal, and other duties necessary to maintain defendant-employer's commercial properties. *Page 3 
3. On October 9, 2001, plaintiff sustained an admittedly compensable injury to his neck and upper back while attempting to adjust a stuck air damper at work. Plaintiff was standing on a ladder with his arm outstretched when he felt the onset of pain in his neck and back.
4. Defendants accepted the claim as compensable by filing a North Carolina Industrial Commission Form 60.
5. Plaintiff received initial medical treatment from Dr. Fred C. Nelson of Chiropractic Partners on October 10, 2001. After several weeks of treatment, Dr. Nelson referred plaintiff for an orthopedic evaluation.
6. On November 5, 2001, plaintiff saw Dr. Robert Esposito at Carolina Orthopaedics and Sports Medicine. Dr. Esposito ordered a cervical MRI that revealed degenerative disc disease at C2-3, C5-6, and C6-7. He diagnosed plaintiff with degenerative disc disease of the cervical spine with no herniation or stenosis.
7. On February 26, 2002, plaintiff underwent a neurological evaluation with Dr. Pamela J. Whitney based on a referral from Dr. Esposito. Dr. Whitney ordered a cervical myelogram and post-CT scan. The myelogram and post-CT scan revealed abnormalities from C4 through C7. Dr. Whitney therefore recommended that plaintiff be evaluated by a neurosurgeon.
8. On March 18, 2002, plaintiff was evaluated by Dr. James S. Fulghum, III at Carolina Back Institute. Dr. Fulghum ordered another cervical MRI as well as a thoracic MRI. The thoracic MRI was within normal limits but the cervical MRI revealed a small central bulge at C5-6 and a lateral foraminal spur at C6-7. Dr. Fulghum referred plaintiff to a pain management program. *Page 4 
9. Plaintiff underwent a pain management evaluation on May 7, 2002. Plaintiff began pain management at Carolina Back Institute on June 4, 2002 and completed the program on June 27, 2002.
10. On July 11, 2002, Dr. Whitney performed EMC/NCV studies that revealed evidence of a nerve root involvement on the right but no abnormalities on the left. Dr. Catherine Lawrence of Carolina Back Institute reviewed the results with plaintiff on July 18, 2002 and recommended a steroid injection to be administered at Carolina Pain Consultants.
11. On December 9, 2002, plaintiff was evaluated by Dr. Dennis E. Bullard at Triangle Neurosurgery. Dr. Bullard ordered another cervical MRI that was obtained on December 31, 2002 and revealed a large herniated disc at C5-6 with cord compression and displacement as well as significant degenerative changes at C5-6 and C6-7. Dr. Bullard recommended surgery and on January 10, 2002 he performed partial corpectomies at C5-7 with attempted arthordesis using bone dowels, attempted stabilization using a DePuy plate, and microdissection of the spinal cord and foramen at both levels.
12. On February 3, 2003, Dr. Bullard noted that plaintiff was doing well post-operatively and recommended physical therapy. On March 3, 2003, Dr. Bullard recommended plaintiff undergo a functional capacity evaluation. Plaintiff reported pain in his mid and low back at this visit, and Dr. Bullard ordered MRIs for further evaluation.
13. On April 1, 2003, plaintiff underwent a functional capacity evaluation at Raleigh Orthopaedic Rehabilitation Specialists.
14. On April 9, 2003, plaintiff was evaluated by Dr. Pavan Yerramsetty at Raleigh Neurology Associates. Dr. Yerramsetty ordered another EMG/NCV that was normal. On October 20, 2003, Dr. Yerramsetty advised that he had no further treatment to offer plaintiff. *Page 5 
15. On September 27, 2003, plaintiff returned to Dr. Bullard complaining of ongoing pain in his neck and left arm. Dr. Bullard opined that plaintiff would not require any additional surgery. He referred plaintiff to a comprehensive pain management program and also to his family physician, Dr. George Moore, for ongoing medication management. Finally, in a separate note, Dr. Bullard wrote a written referral for a neuropsychological evaluation.
16. On September 27, 2004, Dr. Bullard signed a Form 18M that has been submitted to the Commission for approval. The Commission finds that the greater weight of the medical evidence of record supports approval of this Form 18M.
17. At the time of the hearing before the Deputy Commissioner on December 2, 2004, defendants had recently authorized plaintiff to begin treating with Dr. Charles H. Nicholson at Carolina Pain Consultants at Rex Hospital in Raleigh, and plaintiff had seen Dr. Nicholson one time. Thereafter, Dr. Nicholson referred plaintiff to the UNC Department of Neurology for further evaluation. Although defendants authorized treatment with Dr. Nicholson, defendants have denied Dr. Nicholson's referral to UNC.
18. Based upon the greater weight of the medical and other evidence of record, Dr. Nicholson's referral of plaintiff to the UNC Department of Neurology is reasonably required to effect a cure, provide relief, or lessen the period of plaintiff's disability.
19. Plaintiff underwent a neuropsychological evaluation with Dr. Jeanne Hernandez, a psychologist at the University of North Carolina Pain Clinic, on April 5, 2005. Dr. Hernandez was asked by the Industrial Commission to give an independent evaluation regarding the psychological components of plaintiff's pain condition. Dr. Hernandez testified that plaintiff suffers from an adjustment disorder with depression, secondary to chronic pain. *Page 6 
20. Based upon the greater weight of the medical and other evidence of record, including the testimony of Dr. Hernandez, the Commission finds that plaintiff's psychological condition is causally related to his incident at work on October 9, 2001.
21. Based upon the greater weight of the competent medical and other evidence of record, including the testimony of Dr. Moore and Dr. Bullard, the Commission finds that plaintiff's low back condition was either caused or aggravated by plaintiff's incident at work on October 9, 2001.
22. The medical evidence of record establishes that plaintiff's gastrointestinal symptoms secondary to his pain medication are causally related to his compensable injury. The medical evidence of record fails to establish that plaintiff's esophageal reflux or any other additional gastrointestinal conditions are causally related to his compensable injury.
23. Plaintiff requires ongoing treatment in a comprehensive and multi-disciplinary pain management program with access to a psychologist with expertise in pain management, as recommended by Dr. Hernandez and other treating doctors. The University of North Carolina Pain Clinic in Chapel Hill recommended by Dr. Hernandez offers such a multi-disciplinary program and is appropriate to provide this treatment to plaintiff.
24. Dr. Moore is willing to coordinate and manage plaintiff's ongoing medical treatment, including his pain medications, to the end that duplications and unintended reactions may be avoided.
25. Dr. Bullard, Dr. Moore and Dr. Yerramsetty stated that if plaintiff can find employment that accommodates his current work restrictions, he can return to work. Dr. Moore testified as follows:
 If indeed he (plaintiff) can find an employer that is willing to work within the restrictions which Brandon may have, I think *Page 7 
he's quite capable. I mean, I don't see any reason why vocationally he couldn't be trained to do something with a computer or something with some flexibility. However, that employer would (need to) be willing (to) adhere to the fact that he would have to have routine breaks, getting up every fifteen, twenty, thirty minutes possibly depending upon how his back and neck may feel. . . .
Following the above testimony, Dr. Moore questioned whether plaintiff would be hired by an employer given his restrictions, but then specifically testified that he has not removed plaintiff from work in any capacity.
26. Based upon the greater weight of the competent medical and other evidence of record, the Commission finds that plaintiff has failed to establish that he is permanently and totally disabled from working for the remainder of his life. Such a designation of permanent and total disability is premature. Based upon the medical testimony, plaintiff, who is now thirty-two years old, may in the future be able to return to work within his assigned restrictions. Plaintiff has not had an opportunity to fully benefit from a comprehensive pain management program, including treatment of the psychological component of his injury. After his participation in a comprehensive pain management program, plaintiff should have another opportunity to work with vocational rehabilitation to attempt to locate suitable employment, including the use of re-training as suggested by Dr. Bullard. Thus, while plaintiff continues to be totally disabled and is entitled to receive ongoing total disability benefits, the greater weight of the evidence fails to support a determination that plaintiff's current total disability is permanent.
27. Defendants have not defended this action without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to his neck and upper back arising out of and in the course of his employment on October 9, 2001. N.C. Gen. Stat. § 97-2(6).
2. As the result of his compensable injury by accident plaintiff is entitled to continue to receive total disability compensation at the rate of $484.38 per week until further Order of the Commission. Plaintiff is not entitled to permanent and total disability compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment by defendants of medical expenses incurred or to be incurred as a result of his compensable upper and lower back conditions, psychological condition, and gastrointestinal symptoms secondary to his pain medication as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. The approved medical treatment includes evaluation and treatment by the UNC Department of Neurology, ongoing treatment in a comprehensive and multi-disciplinary pain management program at the UNC Pain Clinic, as well as management of plaintiff's ongoing medical treatment and medications by Dr. Moore, to the end that duplications and unintended reactions may be avoided. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Plaintiff is entitled to approval of the Form 18M submitted to the Commission.
5. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 9 
 AWARD
1. Defendants shall continue to pay total disability compensation to plaintiff at the rate of $484.38 per week until further Order of the Commission.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's upper and lower back conditions, psychological condition, and gastrointestinal symptoms secondary to his pain medication, as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including evaluation and treatment by the UNC Department of Neurology, ongoing treatment in a comprehensive and multi-disciplinary pain management program at the UNC Pain Clinic, and management of plaintiff's ongoing medical treatment and medications by Dr. Moore.
3. The Form 18M submitted to the Commission is hereby approved.
4. While plaintiff is entitled to ongoing total disability benefits, plaintiff's request that he be determined permanently and totally disabled is denied.
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from future ongoing total disability compensation due plaintiff and paid directly to plaintiff's counsel by deducting every fourth compensation check due plaintiff.
6. Defendants shall pay the costs.
This the 8th day of January 2007.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 CONCURRING: PGPage 10
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________________ DIANNE C. SELLERS COMMISSIONER *Page 1